UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FLORENTINO ALLENDE, ANTONIO JUAREZ,
SILVANO CABALLERO, ELEUTERIO CALIXTO,
JAVIER DE JESUS, SALVADOR DE JESUS,
ALEJANDRINO DIAZ, WENCESLAO DIAZ,
ADELAIDO GALEANA, RUFINO DE JESUS,
NICOLAS GALEANA, and OCTAVIO JUAREZ,

       Plaintiffs,

    -against-

PS BROTHERS GOURMET, INC. D/B/A INDUS
VALLEY, PHUMAN SINGH, LAKHVIR SINGH
a.k.a. "BILLA,' NARESH MALHOTRA a.k.a.
"NEERAJ," and HARJEET SINGH a.k.a. "BOBBY,"

       Defendants.

**Civil Action No. 11-cv-5427**

**ECF Case**

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

FOX ROTHSCHILD LLP
Glenn S. Grindlinger, Esq.
100 Park Avenue, Suite 1500
New York, New York 10017
(212) 878-7900
(212) 692-0940 (fax)

– and –

LAW OFFICES OF RICHARD FELIX
Richard Felix, Esq.
108 South Franklin Avenue, Suite 9
Valley Stream, NY 11580
(516) 872-8827
(516) 872-8853 (fax)

NY1 602926v1 08/20/12

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..............................................................................1

STATEMENT OF FACTS ..................................................................................3

    A. Background..............................................................................................4
    B. Uniforms.................................................................................................4
    C. Internet Delivery Orders.........................................................................5
    D. Mr. Malhotra's Employment at Indus Valley...........................................6

STANDARD FOR SUMMARY JUDGMENT ....................................................7

ARGUMENT .....................................................................................................8

    I    NARESH MALHOTRA SHOULD BE DISMISSED AS AN
         INDIVIDUAL DEFENDANT BECAUSE HE IS NOT AN "EMPLOYER"
         UNDER EITHER THE FAIR LABOR STANDARD ACT OR
         THE NEW YORK LABOR LAW....................................................................8

         A    Malhotra Is Not An Employer Under the *Carter* Test.....................9
         B.   Malhotra Is Not An Employer Under the *Zheng* Test ..................12

    II   PLAINTIFFS' UNIFORM CLAIMS ARE NOT ACTIONABLE
         UNDER APPLICABLE LAW AND SHOULD BE DISMISSED..........................13

    III  APPLICABLE LAW PERMITS DEFENDANTS' TO
         DEDUCT THE SERVICE FEES CHARGED BY
         INTERNET PROVIDERS FROM EMPLOYEE GRATUITIES ............................17

CONCLUSION ................................................................................................20

NY1 602926v1 08/20/12

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Barfield v. N.Y.C. Health and Hospitals Corp.*,
   537 F.3d 132 (2d Cir. 2008) ...................................................................................................9

*Carter v. Dutchess Cmty. Coll.*,
   735 F.2d 8 (2d Cir. 1984) ..............................................................................................*passim*

*Chenensky v. N.Y. Life Ins. Co.*,
   No. 07-Civ-11504, 2009 U.S. Dist. LEXIS 119549 (S.D.N.Y. Dec. 22, 2009).......................7

*Copantitla v. Fiskardo Estiatorio, Inc.*,
   788 F. Supp. 2d 253 (S.D.N.Y. 2011) ...........................................................................8, 9, 11

*Dister v. Cont'l Group, Inc.*,
   859 F.2d 1108 (2d Cir. 1988) ...........................................................................................8, 10

*Gorey v. Manheim Servs. Corp.*,
   788 F. Supp. 2d 200 (S.D.N.Y. 2011) ...................................................................................10

*Hai Ming Lu v. Jing Fong Restaurant, Inc.*,
   503 F.Supp. 2d 706 (S.D.N.Y. 2007) .....................................................................................15

*Jiao v. Shi Ya Chen*,
   No. 03 Civ. 0165(DE), 2007 WL 4944767 (S.D.N.Y. Mar. 30, 2007) .....................................8

*Mendez v. Pizza On Stone, LLC*,
   No. 11 Civ. 6316 (DLC), 2012 WL 3133522 (S.D.N.Y. Aug. 1, 2012) .................................11

*Morales v. Cancun Charlie's Restaurant*,
   No.: 3:07-cv-1836 (CFD), 2010 WL 7865081 (D.Conn. Nov. 23, 2010).............................10

*Myers v. The Copper Cellar Corp.*,
   192 F.3d 546 (6th Cir. 1999) .................................................................................................17

*Widjaja v. Kang Yue USA Corp.*,
   No. 09-cv-2089 (RRM)(CLP), 2011 WL 4460642 (E.D.N.Y. Sept. 26, 2011) .....................17

*Williams v. Securitas Security Servs. USA, Inc.*,
   No. 10-7181, 2011 WL 3629023 (E.D.Pa. Aug. 17, 2011)....................................................16

*Wu v. Chang's Garden of Storrs, LLC*,
   No. 3:08-cv-746 (WWE), 2010 WL 918079 (D.Conn. March 11, 2010) ..............................11

ii

*Ying Jing Gan v. City of N.Y.,*
   996 F.2d 522 (2d Cir. 1993) ................................................................................7, 8

*Zheng v. Liberty Apparel Co.,*
   355 F.3d 61 (2d Cir. 2003) ........................................................................9, 12, 13

## STATUTES AND REGULATIONS

29 U.S.C. § 201 *et seq.* .................................................................................................1

12 N.Y.C.R.R. § 137-3.13 ..................................................................................... 14, 15

12 N.Y.C.R.R. § 146-1.7 ............................................................................................ 16

12 N.Y.C.R.R. § 146-3.10 .......................................................................................... 15

New York Minimum Wage Order for the Restaurant Industry,
   12 N.Y.C.R.R. § 137-1.1, *et seq.* ......................................................................... 15

New York State Minimum Wage Order for the Hospitality Industry,
   12 N.Y.C.R.R. 146-1.1, *et seq.* ........................................................................... 15

## OTHER AUTHORITIES

Fed. R. Civ. P. 56(c) ....................................................................................................7

N.Y.D.O.L. Op. Ltr., RO-07-0132 (Feb. 6, 2008) ...................................................... 15

N.Y.D.O.L. Op. Ltr., RO-09-0164 (March 11, 2010) ................................................. 17

N.Y.D.O.L. Op. Ltr. (Sept. 27, 1994) ......................................................................... 15

U.S.D.O.L. Op. Ltr. FLSA2004-1NA (March 30, 2004) ............................................ 16

U.S.D.O.L. Op. Ltr. WH-511,
   1981 WL 179038 (DOL WAGE-HOUR) (July 31, 1981) ...................................... 16

NY1 602926v1 08/20/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FLORENTINO ALLENDE, ANTONIO JUAREZ, SILVANO CABALLERO, ELEUTERIO CALIXTO, JAVIER DE JESUS, SALVADOR DE JESUS, ALEJANDRINO DIAZ, WENCESLAO DIAZ, ADELAIDO GALEANA, RUFINO DE JESUS, NICOLAS GALEANA, and OCTAVIO JUAREZ,<br><br>Plaintiffs,<br><br>-against-<br><br>PS BROTHERS GOURMET, INC. D/B/A INDUS VALLEY, PHUMAN SINGH, LAKHVIR SINGH a.k.a. "BILLA,' NARESH MALHOTRA a.k.a. "NEERAJ," and HARJEET SINGH a.k.a. "BOBBY,"<br><br>Defendants. | Civil Action No. 11-cv-5427<br><br>ECF Case |

Defendants PS Brothers Gourmet, Inc, d/b/a Indus Valley ("Indus Valley" or the "Restaurant"), Phuman Singh, Lakhvir Singh, Harjeet Singh, and Naresh Malhotra (collectively "Defendants") respectfully submit this memorandum of law in support of their Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs are former Dishwashers and Delivery Persons of Indus Valley, an Indian food restaurant on the Upper West Side of Manhattan. Individual Defendant Naresh Malhotra, a Runner at Indus Valley, seeks dismissal of all claims against him because he is not an "employer" under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. or the New York Labor Law ("NYLL"). In addition, Plaintiffs claims for reimbursement of uniform expenses and uniform maintenance fees (Plaintiffs' sixth, eighth, and ninth causes of action), as well as their claim that Defendants withheld gratuities (Plaintiffs' seventh cause of action) are

1

not viable as a matter of law. Accordingly, those claims against all of the Defendants should also be dismissed.

Plaintiffs filed this case against Indus Valley and its owners, Phuman Singh and Lakhvir Singh. They also filed this action against Harjeet Singh and Naresh Malhotra asserting the Harjeet Singh and Mr. Malhotra are managers and therefore responsible for the purported wage and hour violations. However, during discovery it became clear that Mr. Malhotra is not a manager and is certainly not an "employer" under the FLSA or the NYLL. Indeed, the undisputed deposition testimony from both Plaintiffs and Defendants shows that Mr. Malhotra did not have the power to hire and fire employees, did not set employee pay rates or schedules, was not responsible for paying employees, and did not manage any employees. Further, Mr. Malhotra did not hire or fire any of the Plaintiffs nor did he set their pay rates or schedules. In fact, Mr. Malhotra did not otherwise set or establish the terms and conditions of Plaintiffs' employment with Indus Valley. Therefore, under even the most liberal interpretation of the FLSA and NYLL, Mr. Malhotra is not an "employer" and he cannot be liable under those statutes. Accordingly, all claims against him should be dismissed.

Plaintiffs' claims for reimbursement of the costs of their uniforms and uniform maintenance fees are also not viable. With respect to the Plaintiffs employed by Indus Valley as Dishwashers, they were required to wear a white shirt and striped pants. However, the undisputed evidence confirms that the Restaurant provided such clothing and laundered it at no cost to the employees. Thus, the Dishwasher-Plaintiffs cannot prevail on their claims for uniform maintenance fees and reimbursement for the costs of the "uniforms."

To the extent that the Delivery-Plaintiffs were required to wear a specific clothing – an issue that Defendants contest – the specific clothing that Plaintiffs claim they wore was not a

"uniform" under either the FLSA or the NYLL. The Delivery-Plaintiffs assert that they were required to wear a black shirt, black pants, and cap. However, there were no specific requirements as to the material, style, or specific type of black shirt, black pants, and cap that they were allegedly required to wear. There was no Indus Valley logo on the shirt, pants, or cap. Indeed, Plaintiffs admitted that they could buy such clothing at any store and the clothing did not require special laundering treatment. This allegedly required clothing was regular, everyday street clothing. Under the FLSA and NYLL, it is well established that when an employer requires an employee to wear only specific color clothing and such clothing does not contain a logo, does not require special laundering, and can be worn as regular street clothing, the required clothing is not a "uniform." Accordingly, Plaintiffs' uniform claims should be dismissed.

Plaintiffs also assert that Indus Valley retained a percentage of the Delivery Persons gratuities when customers ordered food through an internet delivery provider such as SeamlessWeb or GrubHub. However, Plaintiffs ignore the fact that under the FLSA and NYLL, an employer may deduct the fee charged by such internet delivery providers. Here, the internet delivery providers generally charged Indus Valley a 12% processing fee. Consistent with applicable law, the Delivery Persons are only entitled to the "net" gratuity after reducing the internet delivery providers processing fee. Accordingly, the Court should grant summary judgment and affirmatively state that it was lawful for Indus Valley to deduct said processing fee.

## STATEMENT OF FACTS

Defendants refer the Court to the annexed Defendants' Statement of Undisputed Material Facts In Support Of Their Motion For Summary Judgment ("Def. St. Facts"), pursuant to Local Rule 56.1.

**A.**     **Background**

PS Brothers Gourmet, Inc. owns and operated Indus Valley, an Indian food restaurant on the Upper West Side of Manhattan, which has been opened since 2003.   *See* Def. St. Facts ¶ 1. PS Brothers Gourmet, Inc. is owned by two brothers, Phuman Singh and Lakhvir Singh, who are also defendants in this action. *See* Def. St. Facts ¶ 2.

The other two individual defendants in this action are Harjeet Singh, who is unrelated to Phuman or Lakhvir Singh, and Naresh Malhotra.  *See generally*, Plaintiffs' Amended Complaint dated June 1, 2012 ("Compl."[1]); Def. St. Facts ¶ 3.   Both are employed by Indus Valley as Runners.  *See* Def. St. Facts ¶ 21; Deposition of Lakhvir Singh, dated May 10, 2012 ("L. Singh Dep."[2]) 86:6-8.

As a full service Manhattan restaurant, Indus Valley employs a number of individuals in various positions, including Dishwashers and Delivery Persons. *See* Def. St. Facts ¶ 5.   Plaintiffs are all former Dishwashers or Delivery Persons of Indus Valley; none are currently employed by the Restaurant. *See* Def. St. Facts ¶¶ 6-17.

**B.**     **Uniforms**

The Dishwashers employed by Indus Valley are required to wear a uniform consisting of a white shirt, pants and a cap.  *See* Def. St. Facts ¶¶ 39, 50.  Indus Valley provides this uniform to the Dishwashers at no cost to them. *See* Def. St. Facts ¶ 51.   The Restaurant also launders the uniforms free of charge. *See* Def. St. Facts ¶ 52.

---

[1] The Amended Complaint dated June 1, 2012 is attached as Exhibit A to the Declaration of Glenn S. Grindlinger, Esq. filed simultaneously herewith.

[2] The relevant transcript pages of the Deposition of Lakhvir Singh dated May 10, 2012 are attached as Exhibit C to the Declaration of Glenn S. Grindlinger, Esq. filed simultaneously herewith. The Deposition of Lakhvir Singh continued on July 17, 2012.

Plaintiffs allege that the Delivery Persons also had to wear a uniform a contention that Defendants dispute. *See* Def. St. Facts ¶ 39. According to the Plaintiffs' Delivery Persons had to wear a black shirt, black pants, and a cap, which they had to purchase and launder. *See* Compl. ¶ 30; Def. St. Facts ¶ 40. There was nothing special about the clothing that they were required to wear other than it had to be black. *See* Def. St. Facts ¶¶ 40-48. Indus Valley did not require any special style or cut and the clothing did not contain any Indus Valley logo. *See id.* The clothing did not require any special laundering treatment. Indeed, the clothing was regular street wear. *See* Def. St. Facts ¶¶ 40-49.

## C.   Internet Delivery Orders

As is becoming commonplace, many Manhattan restaurants utilize the service of internet delivery vendors where customers log-onto the vendor's website and order food for delivery from specific restaurants. Indus Valley was no exception. Beginning in 2006, Indus Valley has worked with a number of internet delivery vendors the most prominent being SeamelessWeb and GrubHub. *See* Def. St. Facts ¶ 55.

In order to utilize the services of the internet delivery vendors, Indus Valley has entered into a number of contracts. *See* Def. St. Facts ¶ 56. These contracts contain specific clauses that entitle the internet delivery vendors to a fee. *See* Def. St. Facts ¶¶ 57-58; Declaration of Glenn S. Grindlinger ("Grindlinger Decl."), dated August 20, 2012, Exs. R and S. The processing fee includes not just the value of the food and beverages ordered but also includes any tax and gratuities added to the order and paid by the customer. *See id.* The fee is between 3% and 12.5% of the value of each customer's order with a higher percentage fee being assessed as Indus Valley's total monthly sales volume with vendor grows. *See id.* For the most part, the internet delivery vendors have assessed a 12% processing fee on Indus Valley orders obtained through

the vendors' websites. *See* L. Singh Dep. at 193:4-23; Deposition of Phuman Singh, dated May 11, 2012 ("P. Singh Dep."[3]) at 291:10-16.

Indus Valley has deducted the processing fee charged by the internet delivery vendors from the gratuities earned by Delivery Persons when customers paid for a gratuity through the vendors' websites. *See* Def. St. Facts ¶ 60. Indus Valley did not make any such deduction from the gratuities earned by other employees including Dishwashers who occasionally make deliveries on behalf of the Restaurant. *See* Def. St. Facts ¶ 59.

**D.     Mr. Malhotra's Employment at Indus Valley**

Indus Valley hired Mr. Malhotra in 2007 as a Runner. *See* Def. St. Facts ¶¶ 4, 20-21. As a Runner, Mr. Malhotra is primarily responsible for busing tables, bringing food to the tables, and packing deliveries. *See* Def. St. Facts ¶ 23. Over his years of employment, his duties have expanded slightly to include opening the Restaurant and taking orders from customers. *See id.*

Mr. Malhotra is not a manager. *See* Def. St. Facts ¶ 22. He does not hire or fire Indus Valley employees and he never hired or fired any of the Plaintiffs. *See* Def. St. Facts ¶¶ 24-26. Mr. Malhotra does not set or alter the wage rates of Indus Valley employees and he never set or altered the wage rates of any of the Plaintiffs. *See* Def. St. Facts ¶¶ 27-28. In fact, he did not discuss pay issues with any of the Plaintiffs. *See* Def. St. Facts ¶ 30. Mr. Malhotra does not set the schedules of Indus Valley employees and he did not set the schedules of any of the Plaintiffs. *See* Def. St. Facts ¶¶ 31-32.

---

[3] The relevant transcript pages of the Deposition of Phuman Singh dated May 11, 2012 are attached as Exhibit B to the Declaration of Glenn S. Grindlinger, Esq. filed simultaneously herewith. The Deposition of Phuman Singh continued on May 24, 2012 and July 17, 2012.

While Mr. Malhotra will ask employees to perform various tasks, such as brining up supplies from the basement, getting supplies from the market, or telling an employee to make a delivery, *see, e.g.,* Deposition of Antonio Juarez, dated June 6, 2012 ("A. Juarez Dep."[4]) at 110:24 – 111:2 and Deposition of Eleuterio Calixto, dated June 11, 2012 ("Calixto Dep."[5]) at 100:14 – 101:24, he does not have the power to discipline employees should they ignore his request. *See* Def. St. Facts ¶¶ 33-34. He does not have the authority to discipline employees. *See id.* In fact, he simply has no authority to manage or supervise Indus Valley employees. *See* P. Singh Dep. at 45:15-24, 132:14-189, 141:8-15.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate whenever "[t]here is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). There are no genuine issues of material fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Chenensky v. N.Y. Life Ins. Co.,* No. 07-Civ-11504, 2009 U.S. Dist. LEXIS 119549, at *10 (S.D.N.Y. Dec. 22, 2009) (internal citations omitted).

To defeat summary judgment, the non-moving party must "[d]o more than simply show that there is some metaphysical doubt as to the material facts." *Dister v. Cont'l Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir. 1988). Rather, the non-moving party must come forward with "[s]pecific facts showing that there is a genuine issue of material fact to be tried." *Ying Jing Gan*

---

[4] The relevant transcript pages of the Deposition of Antonio Juarez, dated June 6, 2012 are attached as Exhibit G to the Declaration of Glenn S. Grindlinger, Esq. filed simultaneously herewith.

[5] The relevant transcript pages of the Deposition of Eleuterio Calixto, dated June 11, 2012 are attached as Exhibit I to the Declaration of Glenn S. Grindlinger, Esq. filed simultaneously herewith.

*v. City of N.Y.,* 996 F.2d 522, 532 (2d Cir. 1993). These specific facts set forth by the non-moving party must be based on "[c]oncrete evidence from which a reasonable juror could return a verdict in his favor." *Dister*, 859 F.2d at 1114 (emphasis added).

## ARGUMENT

### I.   NARESH MALHOTRA SHOULD BE DISMISSED AS AN INDIVIDUAL DEFENDANT BECAUSE HE IS NOT AN "EMPLOYER" UNDER EITHER THE FAIR LABOR STANDARD ACT OR THE NEW YORK LABOR LAW

Plaintiffs allege that Mr. Malhotra is individually liable for the purported wage and hour violations because he is an "employer" under the FLSA and NYLL. The facts and law support the opposite conclusion and therefore summary judgment should be granted to Defendants on this issue and the claims against Mr. Malhotra should be dismissed.

To determine whether an individual qualifies as an "employer" under the FLSA and the NYLL, and therefore liable for purported FLSA and/or NYLL violations, courts apply the "economic reality test." *See Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)[6]; *Jiao v. Shi Ya Chen,* No. 03 Civ. 0165(DE), 2007 WL 4944767, at *9 n. 12 (S.D.N.Y. Mar. 30, 2007) (noting that "courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA."). In the Second Circuit the economic realities test is in fact two overlapping tests. *See Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 308 (S.D.N.Y. 2011). The first test based on *Carter* and its progeny reviews whether the alleged employer: (1) has the power to hire and fire employees; (2) supervised and

---

[6] "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA." *Jiao v. Shi Ya Chen,* No. 03 Civ. 0165(DE), 2007 WL 4944767, at *9 n. 12 (S.D.N.Y. Mar. 30, 2007); *see also Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 308 n. 21 (S.D.N.Y. 2011).

controlled employee work schedules and conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *See Carter*, 735 F.2d at 12. The second test as set forth by the Second Circuit in *Zheng v. Liberty Apparel Co.,* 355 F.3d 61 (2d Cir. 2003) evaluates: (i) whether the alleged employer's premises and equipment were used for the plaintiffs' work; (ii) whether the putative employer had a business that could or did shift as a unit from one putative joint employer to another; (iii) the extent to which plaintiffs performed a discrete line-job that was integral to the putative employer's production process; (iv) whether responsibility could pass from one subcontractor to another without material changes; (v) the degree to which the putative employer or his agents supervised plaintiffs' work; and (vi) whether plaintiffs worked exclusively or predominantly for the putative employer. *Id.,* at 71. No one factor in either test is dispositive and instead courts will look to the totality of the circumstances to determine whether the economic realities tests have been met. *See Barfield v. N.Y.C. Health and Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008).

When applying these tests in their totality, it is clear the Mr. Malhotra is not an "employer" under the FLSA or NYLL and therefore the claims against him should be dismissed.

## A.    Malhotra Is Not An Employer Under The *Carter* Test

A review of the *Carter* test factors clearly demonstrates that Mr. Malhotra is not Plaintiffs' employer under the FLSA and NYLL. The first *Carter* factor evaluates whether the putative employer has the power to hire and fire employees. *See Carter*, 735 F.2d at 12. Throughout his employment at the restaurant, Mr. Malhotra did not hire or fire employees. *See* Def. St. Facts ¶ 24. Nor is there any assertion that he hired or fired any of the Plaintiffs. *See* Def. St. Facts ¶¶ 25-26. As such, the first Carter factor weighs in favor of finding Mr. Malhotra to be a non-employer. *See Copantitla*, 788 F. Supp. 2d at 309-310 (holding that sole

shareholder of corporate defendant was not an employer under the FLSA or NYLL because, *inter alia*, she only made recommendations on hiring and firing which managers were free to disregard); *Gorey v. Manheim Servs. Corp.,* 788 F. Supp. 2d 200, 210 (S.D.N.Y. 2011) (holding that putative employer was not the employer of plaintiffs under the FLSA because, *inter alia*, the putative employer did not have the power to hire or fire employees).

The second *Carter* factor reviews whether the putative employer supervised and controlled employee work schedules and conditions of employment. *See Carter*, 735 F.2d at 12. Mr. Malhotra was not a manager of the Restaurant and he did not have the authority to supervise Plaintiffs or control the conditions of their employment. *See* Def. St. Facts ¶¶ 22-28, 31-37. Mr. Malhotra did not determine employee schedules. *See* Def. St. Facts ¶¶ 31. He did not establish the times when Plaintiffs would come to work, leave work, take a break, or have a day off. *See* Def. St. Facts ¶ 32. Nor did he set such times for any other employees. *See* Def. St. Facts ¶ 31. While there may have been times when Mr. Malhotra asked Plaintiffs to perform various tasks, such as going to the market to get supplies, this is insufficient to establish that Mr. Malhotra was Plaintiffs' employer under either the FLSA or the NYLL. *See Morales v. Cancun Charlie's Restaurant,* No.: 3:07-cv-1836 (CFD), 2010 WL 7865081, at \*6 (D. Conn. Nov. 23, 2010) (holding that individual was not an employer under the FLSA even though she occasionally supervised plaintiff's work). Accordingly, this factor weighs against finding Mr. Malhotra to be Plaintiffs' employer.

The third *Carter* factor addresses whether the putative employer determined the rate and method of payment of the employees. *See Carter*, 735 F.2d at 12. The undisputed facts clearly demonstrate that Mr. Malhotra did not play any role in determining the rate and method of payment for the Plaintiffs. At no time did any of the Plaintiffs discuss their wage rate or method

of payment with Mr. Malhotra. *See* Def. St. Facts ¶ 27-30. Further, Mr. Malhotra did not have

the authority to set wage rates or methods of payment with Indus Valley employees. *See* Def. St.

Facts ¶ 27. While Mr. Malhotra did, on rare occasions, physically hand Plaintiffs their wages,

*see* Deposition of Wenceslao Diaz, dated July 6, 2012 ("W. Diaz Dep."[7]) at 74:5-17 (noting that

Mr. Malhotra physically paid Plaintiff Wenceslao Diaz on only one occasion), this is insufficient

to find that Mr. Malhotra is an employer under the FLSA. *See Wu v. Chang's Garden of Storrs,*

*LLC,* No. 3:08-cv-746 (WWE), 2010 WL 918079, at \*4-\*5 (D. Conn. Mar. 11, 2010) (holding

that an individual who occasionally paid employees was not an employer under the FLSA);

*Mendez v. Pizza On Stone, LLC,* No. 11 Civ. 6316 (DLC), 2012 WL 3133522, at \*2 (S.D.N.Y.

Aug. 1, 2012) (holding that manager was not an employer under the FLSA even though he

physically paid plaintiffs). Therefore, this factor weighs in favor of finding non-employer status

for Mr. Malhotra. *See Copantitla*, 788 F. Supp. 2d at 310 (holding that sole shareholder of

corporate defendant was not an employer under the FLSA or NYLL because, *inter alia*, she had

no role in determining employee compensation).

The fourth *Carter* factor reviews whether the putative employer maintained employment

records. *See Carter*, 735 F.2d at 12. Here, Mr. Malhotra never kept any employment records

with respect to Plaintiffs or any other employees of Indus Valley. *See* Deposition of Naresh

Malhotra, dated May 21, 2012 ("Malhotra Dep."[8]) at 144:14-18. Accordingly, this factor weighs

in favor of finding Mr. Malhotra to be a non-employer. *See Copantitla*, 788 F. Supp. 2d at 310

---

[7] The relevant transcript pages of the Deposition of Wenceslao Diaz, dated July 6, 2012 are attached as Exhibit M to the Declaration of Glenn S. Grindlinger, Esq. filed simultaneously herewith.

[8] The relevant transcript pages of the Deposition of Naresh Malhotra, dated May 21, 2012 are attached as Exhibit E to the Declaration of Glenn S. Grindlinger, Esq. filed simultaneously herewith.

11

(holding that sole shareholder of corporate defendant was not an employer under the FLSA or NYLL because, *inter alia*, she did not maintain employment records).

Accordingly, none of the *Carter* factors can be met and therefore the claims against Mr. Malhotra should be dismissed.

### B.   Malhotra Is Not An Employer Under The *Zheng* Test

The purpose of the *Zheng* test is to determine whether the putative employer "has functional control over workers even in the absence of the formal control measured by the *Carter* factors. *Zheng*, 355 F.3d at 72. As with the *Carter* test, a review of the *Zheng* test factors clearly shows that Mr. Malhotra did not have any functional control over Plaintiffs and thus was not an employer under the FLSA and NYLL.

The first *Zheng* factor is whether the alleged employer's premises and equipment were used for the plaintiffs' work. *See id.* at 71. Plaintiffs never worked on any premises owned or controlled by Mr. Malhotra nor did they use Mr. Malhotra's equipment. *See* P. Singh Dep. at 25:11-24; L. Singh Dep. at 31:24 – 35:17. Therefore, the first factor weighs against finding employer status for Mr. Malhotra.

The second, third, and fourth *Zheng* factors evaluate whether the putative employer had a business that could or did shift as a unit from one putative joint employer to another, the extent to which plaintiffs performed a discrete line-job that was integral to the putative employer's production process, and whether responsibility could pass from one subcontractor to another without material changes. *Zheng*, 355 F.3d at 71. Mr. Malhotra did not (and does not) own his own business; rather he worked exclusively as an employee of Indus Valley, an entity in which Mr. Malhotra owns no interest. *See* Def. St. Facts ¶¶ 19-21. Thus, these factors are not applicable to Mr. Malhotra.

The fifth *Zheng* factor reviews the degree to which the putative employer or his agents supervised plaintiffs' work. *Zheng*, 355 F.3d at 71. To the extent Mr. Malhotra ever supervised Plaintiffs' work, such supervision was minimal. Mr. Malhotra did not discipline any of the Plaintiffs nor did he have the authority to do so. *See* Def. St. Facts ¶¶ 33-34. While he may have asked Plaintiffs to perform certain tasks, he had no authority to address any problems he encountered should Plaintiffs or any other employee refuse to comply with what he asked them to do other than to tell a supervisor or manager. *See id.* Thus, Mr. Malhotra did not effectively supervise Plaintiffs and this factor weighs against finding him to be an employer under applicable law.

The final Zheng factor evaluates whether plaintiffs worked exclusively or predominantly for the putative employer. *Zheng*, 355 F.3d at 71. There can be no doubt that Plaintiffs worked exclusively for Indus Valley, an entity that employed Mr. Malhotra but in which Mr. Malhotra had no interest. *See* Def. St. Facts ¶¶ 19, 21. This factor therefore supports the fact that Mr. Malhotra was not Plaintiffs' employer under the FLSA and NYLL.

Because none of the Zheng factors favor finding Mr. Malhotra to be Plaintiffs' employer under the FLSA and NYLL, the claims against Mr. Malhotra should be dismissed in their entirety.

## II.   PLAINTIFFS' UNIFORM CLAIMS ARE NOT ACTIONABLE UNDER APPLICABLE LAW AND SHOULD BE DISMISSED

Plaintiffs' Amended Complaint alleges that they were required to purchase and launder their own uniforms and therefore they are entitled to be reimbursed for the cost of the uniforms as well as a uniform maintenance allowance. Plaintiffs' uniform claims are not viable.

Plaintiffs worked for Indus Valley as Dishwashers and Delivery Persons. The Dishwashers were required to wear a white shirt and pants. *See* Def. St. Facts ¶ 50. Indus Valley provided this uniform to the dishwashers at no cost. *See* Def. St. Facts ¶¶ 50-51. The Restaurant also laundered the uniform at no cost to the employees. *See* Def. St. Facts ¶ 52. As such, the Dishwashers are not entitled to be reimbursed for their uniforms nor are they entitled to a uniform maintenance allowance.[9] Accordingly, the uniform claims with respect to the dishwashers should be dismissed.

The Plaintiffs who worked as Delivery Persons claim that they were required to wear a black shirt, black hat, and a cap. *See* Def. St. Facts ¶ 40. Even if true, such an outfit is not a "uniform" under applicable law and therefore there is no requirement to reimburse the Delivery Persons for purchasing the outfit or to lauder the outfit.

Plaintiffs conceded that the shirt, pants, and cap did not contain any special insignia or logo. *See* Def. St. Facts ¶ 41. They admitted that they could purchase the shirt at any store that sold shirts, the pants at any store that sold pants, and the cap at any store that sold hats. *See* Def. St. Facts ¶¶ 42-48. They further admitted that the clothes did not require any special maintenance to be laundered; it could be washed in a regular washing machine. *See* Def. St. Facts ¶ 49.

Under the NYLL, a required uniform is defined as "clothing worn by an employee, at the request of an employer, while performing job-related duties." *See* 12 N.Y.C.R.R. § 137-3.13;

---

[9] Some of the Dishwashers claim that the uniforms provided were too big. *See* W. Diaz Dep. at 84:18 – 85:8. They assert that in lieu of wearing the uniforms they chose to wear the same thing as the Delivery Persons. *See* Def. St. Facts ¶ 54. As discussed below, for the same reasons the Delivery Persons are not entitled to be reimbursed for purchase of uniforms or for a uniform maintenance allowance, these Dishwashers are not entitled to such remuneration.

*see also* 12 N.Y.C.R.R. § 146-3.10[10]. This does not include clothing "that may be worn as part of an employee's ordinary wardrobe." *Id.* Here, Indus Valley only required Delivery Persons to wear ordinary street clothes such as a black, shirt, black hat, and black cap. These are ordinary clothes that are customarily and can be worn outside of the work-place setting. *See Hai Ming Lu v. Jing Fong Rest., Inc.,* 503 F. Supp. 2d 706, 712 (S.D.N.Y. 2007) (granting summary judgment because white shirts, black pants, black socks, and black shoes that employees were required to wear was not a "uniform"); N.Y.D.O.L. Op. Ltr., RO-07-0132 (Feb. 6, 2008)[11] (noting that a requirement that employees wear black dress slacks and a specific color button down shirt was not a uniform under New York law because the pants and shirt "appear . . . to be of the type that can be worn as part of a normal wardrobe[.]"); N.Y.D.O.L. Op. Ltr. (Sept. 27, 1994) (same). Thus, the clothes that Plaintiffs claim the Delivery Persons wore are not a uniform as defined by New York law and therefore Plaintiffs' claim for reimbursement of the uniform should be dismissed.

Because the Delivery Persons' clothing is not a uniform under New York law, there is no requirement to provide a uniform maintenance allowance. *See* 12 N.Y.C.R.R. § 137-3.13; *see also* 12 N.Y.C.R.R. § 146-3.10. Moreover, even if the required clothing is a uniform under New York law, a maintenance allowance would not be required because the uniform is made of wash and wear material that can be routinely washed and dried with other garments and does not

---

[10] As employees of a restaurant, Plaintiffs were covered by the New York Minimum Wage Order for the Restaurant Industry, 12 N.Y.C.R.R. § 137-1.1, *et seq.* until January 1, 2011 when the New York State Minimum Wage Order for the Hospitality Industry, 12 N.Y.C.R.R. 146-1.1, *et seq.*, replaced the Restaurant Industry Wage Order.

[11] Copies of all New York Department of Labor and United States Department of Labor opinion letters cited herein are attached as Exhibits U-Y to the Declaration of Glenn S. Grindlinger, Esq. filed simultaneously herewith.

require dry cleaning or other special treatment. *See* 12 N.Y.C.R.R. § 146-1.7. As such, plaintiffs claim for uniform maintenance allowance under the New York law is not viable.

The FLSA uses the same analysis as the NYLL. Under the FLSA, an employer is not required to reimburse an employee for the purchase of a "uniform" if the uniform consists of basic street clothing. *See* U.S.D.O.L. Op. Ltr. FLSA2004-1NA (Mar. 30, 2004) (noting that a requirement that employees wear a navy blue golf shirt and khaki shorts or trousers was not a "uniform" for FLSA purposes because it was "basic ordinary street clothing" and therefore the employer did not need to reimburse employees for the cost of the such clothes.)

Similarly, there is no requirement under the FLSA to provide a uniform maintenance payment to an employee when the employer requires the employee to wear a uniform that is made from "wash and wear" materials. *See* U.S.D.O.L. Op. Ltr. WH-511, 1981 WL 179038 (DOL WAGE-HOUR) (July 31, 1981) ("We have concluded that for those uniforms of 'wash and wear' material requiring only washing and tumble or drip drying which may be laundered with personal garments, a uniform maintenance reimbursement will not be required."); *see also Williams v. Securitas Security Servs. USA, Inc.,* No. 10-7181, 2011 WL 3629023, at *5 (E.D. Pa. Aug. 17, 2011) (denying motion for certification of a collective action on plaintiffs claim for uniform maintenance payments under the FLSA because the uniforms were made of wash and wear material and therefore there was no requirement to provide additional compensation to putative collective under the FLSA).

Because at best the Delivery-Plaintiffs were only required to wear street clothing, which they could buy at any store that sold clothing and the required street clothing did not require special maintenance, Plaintiffs are not entitled to be reimbursed for the purchase of their

uniforms nor are they entitled to a uniform maintenance payment. Accordingly, Plaintiffs uniform claims should be dismissed.

## III.   APPLICABLE LAW PERMITS DEFENDANTS' TO DEDUCT THE SERVICE FEES CHARGED BY INTERNET PROVIDERS FROM EMPLOYEE GRATUITIES

Both federal and New York law permit an employer to deduct from a gratuity the percentage charged by credit card companies when the customer pays by credit card. *See Myers v. The Copper Cellar Corp.*, 192 F.3d 546, 553 (6th Cir. 1999) (holding that "as a matter of law, an employer may subtract a sum from an employee's charged gratuity which reasonably compensates it for its outlays sustained in clearing that tip[.]"); *Widjaja v. Kang Yue USA Corp.*, No. 09-cv-2089 (RRM)(CLP), 2011 WL 4460642, at *6-*7 (E.D.N.Y. Sept. 26, 2011) (adopting the reasons of *Myers* and holding that under the FLSA an employer may lawfully deduct from an employee's gratuity the fees charged by credit card companies when the customers uses a credit card to pay); N.Y.D.O.L. Op. Ltr., RO-09-0164 (March 11, 2010) (noting that under the NYLL an employer may lawfully deduct from an employee's gratuity the fees charged by credit card companies when the customers uses a credit card to pay). The rationale permitting such deductions is that:

> Before an employee can be entitled to attain any funds on account of a charged customer gratuity, that debited obligation must be converted into case. The liquidation of the restaurant patron's paper debt to the table server required the predicate payment of a handling fee to the credit card issuer. Accordingly, the employee could only have been entitled to receive the cash proceeds of the charged tip net of liquidation expenses.

Myers, 192 F.3d at 553-54. "To hold otherwise . . . would amount to the employee receiving more than the customer intended with the employer making up the difference." *Widjaja* 2011 WL 4460642, at *7 (citing *Myers*, 192 F.3d at 554). As such, the employer is not required to

bear the expense of the fees assessed by credit card companies when a customer pays for a gratuity with a credit card.

As is becoming increasingly common in Manhattan, restaurants use the services of internet providers to obtain delivery orders. Indus Valley is no exception. *See* Def. St. Facts ¶ 55. Starting in 2006, Indus Valley contracted with SeamlessWeb and other internet vendors, which permitted customers to log onto the internet vendors website and place delivery orders for Indus Valley. *See id.* For this service SeamlessWeb and the other internet vendors charged a commission or fee, which, because of the volume of business, was usually 12% of the value of each order inclusive of any tax or gratuity added to the order. *See* Def. St. Facts ¶ 57; Grindlinger Decl. Exs. R, S, and T; L. Singh Dep. at 193:17-23. For example, if the fee charged by the internet provider was 12% and an individual ordered $25.00 worth of food, plus 8.875% sales tax ($2.22[12]) and a $3.00 tip for a total of $28.22 then the internet provider would keep $3.39 and remit the remaining amount of $24.83 to Indus Valley. *See* Grindlinger Decl. Exs. R, S, and T. Thus, the fee charged by the internet service providers is similar to the fee charged by credit card companies.

This same rationale that permits an employer to deduct the processing fee charged by credit card companies applies to the fees assessed by internet vendors. When a customer adds a gratuity to an order placed through an internet vendor the internet vendor, much like a credit card company, charges a fee. Thus, when a $10 gratuity is added to an order placed through an internet vendor, the restaurant does not receive the full $10 to pass along to the employee. Rather it receives $10 less the fee charged by the internet vendor. This is no different then when a customer pays by credit card. If the customer adds a $10 gratuity to the check and pays by

18

credit card, the restaurant will not receive the full $10; it will receive $10 less the processing fee charged by the credit card. Accordingly, it is permissible for a restaurant to deduct the percentage fee charged by internet vendors from employee gratuities when customers order food through internet vendors.

It is undisputed that Indus Valley did not deduct any monies from the gratuities earned by Dishwashers[13] that were added to orders obtained from internet vendors. *See* Def. St. Facts ¶ 59. Therefore, Plaintiffs claim that Indus Valley deducted monies from the gratuities earned by Dishwashers that were added to orders obtained from internet vendors should be dismissed.

Indus Valley did deduct monies from the gratuities earned by Delivery Persons that were added to internet delivery orders. *See* Def. St. Facts ¶ 60. While the parties differ as to the amount that was deducted[14], it is clear that under applicable law Indus Valley was permitted to deduct from such gratuities the percentage charged by the internet providers. That is, under the rationale applied by courts, which permit employers to deduct credit card processing fees, both the FLSA and NYLL permit an employer to deduct from an employee's gratuity the percentage charged by internet vendors when the customer orders food through an internet vendor.

At bar, it is undisputed that the internet vendors charged Indus Valley a fee. Therefore, it is and was permissible for Indus Valley to deduct the fee charged by internet vendors from employee gratuities when customers ordered food through the internet vendors and Plaintiffs' claim to the contrary should be dismissed.

---

[12] The $2.22 is determined by multiplying 8.875% to the $25.00 order: $2.22 = $25.00 x 0.0875.

[13] On occasion, Indus Valley dishwashers made food deliveries for the restaurant.

[14] Plaintiffs claim it was 15% while Defendants assert that it was 12%. *See, e.g.,* L. Singh Dep. at 193:17 – 194:12; P Singh Dep. at 285:18-23; Calixto Dep. at 136:4-10; A. Juarez Dep. At 126:20-24.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant its Motion for Partial Summary Judgment dismissing all claims against Naresh Malhotra, dismissing Plaintiffs' uniform claims and dismissing in part Plaintiffs claims concerning the deduction taken from their gratuities for the internet service processing fees; and grant Defendants such other and/or further relief as the Court may deem just and proper.

Dated:  New York, New York
       August 20, 2012

FOX ROTHSCHILD LLP

By: _____
    Glenn S. Grindlinger, Esq.
    100 Park Avenue, Suite 1500
    New York, New York 10017
    (212) 878-7900

    – and –

LAW OFFICES OF RICHARD FELIX
Richard Felix, Esq.
108 South Franklin Avenue, Suite 9
Valley Stream, NY 11580
(516) 872-8827

*Attorneys for Defendants*